Wesley Valsom JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 118–84.

Court of Criminal Appeals of Texas, En Banc.

Nov. 21, 1984.

Charles Campion, Don W. King, Jr., San Antonio, for appellant.

Bill M. White, Former Dist. Atty., Wayne Hampton and Alan E. Battaglia, Former Asst. Dist. Attys., Sam D. Millsap, Jr., Dist. Atty., and Charles Estee, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This is an appeal from a conviction for sexual abuse of a child pursuant to former V.T.C.A. Penal Code, § 21.10.[1] The trial court assessed punishment at eight years confinement in the Texas Department of Corrections. On direct appeal, the San Antonio Court of Appeals affirmed the conviction in an unpublished opinion. We granted the appellant's petition for discretionary review to examine the procedure employed by the trial court in assessing appellant's punishment. We find that the trial judge abused his discretion in setting punishment and we remand the case to the trial court for a new assessment of punishment.

The record reflects that appellant waived trial by jury and entered a plea of not guilty. On December 26, 1979, trial commenced in the 187th Judicial District Court of Bexar County before the Honorable John Benavides. At the conclusion of the

---

1. Repealed by Acts 1983, 68th Leg., p. 5321, ch. 977, § 12. Effective September 1, 1983.

evidence, Judge Benavides found the appellant guilty of the offense of sexual abuse of a child. At that time, counsel for appellant requested the trial court postpone hearing the punishment evidence until a later date. Defense counsel represented to the court that there were other witnesses not presently available who could furnish evidence on appellant's behalf. Defense counsel also requested that a comprehensive presentence investigation report be prepared and studied by the court, as appellant had filed an application for probation. Judge Benavides deferred judgment on punishment pending a presentence investigation and recessed the proceedings.

The record reflects that the Honorable John Benavides died prior to assessing punishment in this case, and the next proceeding shown in the statement of facts occurred on January 15, 1981. In the proceeding, no evidence was offered by either the State or the appellant. The Honorable Pat Priest entered a judgment assessing appellant's punishment at eight years confinement in the Texas Department of Corrections.[2] Judge Priest denied appellant's application for probation, as well as his motion for mistrial. Formal sentence was pronounced on January 29, 1981, ordering that appellant be confined in the Department of Corrections for not less than two years nor more than eight years. Appel-

lant's motion for new trial was also denied on January 29, 1981.

Appellant complains that the trial court erred in assessing punishment, over appellant's objection, without having reviewed the transcript of the evidence presented at the guilt-innocence stage of trial. More specifically, appellant contends that the trial judge abused his discretion by assessing punishment based solely on the probation officer's presentence investigation report. We agree.

The record reflects that during the January 15, 1981, punishment hearing, appellant's counsel asked Judge Priest whether a transcript of the proceedings before Judge Benavides had been prepared. Judge Priest responded that he did not have access to the transcript of the trial. Appellant's counsel then objected, in connection with his motion for mistrial, to the trial court's action in fixing punishment in that manner.

It is undisputed that the trial court assessed punishment in this case without reviewing the transcript of the testimony adduced at the guilt-innocence stage of trial. Further, no evidence was presented by the State or the appellant at the punishment hearing. It follows, therefore, that the sole basis for the trial court's assessment of punishment was derived from the presentence investigation report prepared by the probation office. We now turn to con-

2. The statement of facts does not reveal that any proceedings were conducted between the December 26, 1979, adjudication of guilt by Judge Benavides and the January 15, 1981, assessment of punishment by Judge Priest. Indeed, at the conclusion of the December 26, 1979, trial before Judge Benavides, the official court reporter's notes state that "the proceedings were recessed until January 15, 1981, at 9:30 o'clock a.m." This is the posture in which both sides have presented and argued the case to us.

However, some confusion arises from the record concerning intervention by District Judge Edward Prado. A September 18, 1980, docket sheet notation states "Motion for Mistrial sentenced to 8 yrs." Appellant's motion for new trial, dated January 21, 1981, contains the statement that "the Judge hearing said cause [Judge Benavides] passed away prior to the completion of the case in that no sentencing [sic] had been announced. Subsequently, Judge Edward Pra-

do announced the sentence in said case, never having had an opportunity to either read the record or observe the demeanor conduct and personality of the said witnesses. Subsequently [sic] to the above related proceedings, the Honorable Pat Priest again pronounced sentence and determined Defendant's application for probation be denied."

We note, however, that both the judgment and the sentence affirmatively recite that punishment was determined by the court on January 15, 1981. The statement of facts reflect that those proceedings were held "before the Honorable Pat Priest, Judge Presiding." We are constrained to find that whatever occasioned the docket entry of September 18, 1980, the statement of facts and judgment indicate it was not a "proceeding" in this case, and does not control its disposition. We find that Judge Priest conducted the punishment hearing *ab initio* on January 15, 1981.

sider whether, at the time of the trial of this case, a presentence investigation report was a proper tool for the trial court to employ in determining the punishment to be assessed.[3]

Early on, Presiding Judge Onion expressed his view on the use of presentence reports in *Rodriguez v. State*, 502 S.W.2d 13 (Tex.Cr.App.1973), stating that:

> "The primary purpose of the pre-sentence report is to provide the trial court with succinct and precise information upon which to base a rational decision *on the motion for probation.*"[4]

Judge Onion's opinion on the proper use of a presentence report grew stronger in 1978 when he authored concurring opinions in *Bean v. State*, 563 S.W.2d 819, 821 (Tex.Cr.App.1978), and *Nunez v. State*, 565 S.W.2d 536, 538 (Tex.Cr.App.1978). In those cases, the trial court bifurcated a plea of guilty trial, deferring punishment "in order to obtain a presentence investigation." Judge Onion took the occasion to "add a word of caution to trial judges about the use of pre-sentence reports to determine punishment." In *Bean*, supra, he opined:

> "The use of presentence investigation reports is to be commended. The only reference to such reports, however, to be found in the Code of Criminal Procedure is in Article 42.12, Section 4, V.A.C.C.P. *The proper use of such reports is to enable the trial court to pass on the issue of probation, not to determine the punishment to be assessed.*"

Judge Onion reiterated his views in *Nunez*, supra. After all, it should be remembered that these reports often contain reports of arrests not resulting in final convictions, *McNeese v. State*, 468 S.W.2d 800

(Tex.Cr.App.1971); *Valdez v. State*, 491 S.W.2d 415 (Tex.Cr.App.1973), reports of pending indictments, *Clay v. State*, 518 S.W.2d 550 (Tex.Cr.App.1975), hearsay statements, *Brown v. State*, 478 S.W.2d 550 (Tex.Cr.App.1972), or unseen psychological reports, *Rodriguez*, supra. Eyeing the possible contents of a presentence report, Judge Onion declared:

> "While many of these matters can be considered by the court in passing upon the issue of probation, they would not be considered admissible on the issue of guilt or upon the issue of the punishment. [footnote omitted] ... If there be a pre-sentence report, *it should be used to determine the question of granting probation alone.* This would avoid any argument that in assessing punishment the court took into consideration arrest reports not resulting in final convictions, extraneous offenses, hearsay, rumors, etc., which frequently find their way into pre-sentence reports and which *should not be used in determining punishment.*" *Nunez*, supra at 539–40.

Two months later, however, an entirely different panel decided *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr.App.1978). In *Angelle*, the trial court employed substantially the same procedure as in *Bean*, supra. Judge Roberts espoused the view that "whenever an issue of the proper punishment is present a presentence investigation and report may be utilized to assist the trial judge in the exercise of his discretion." In October of 1978, the Court's Motion for Rehearing En Banc in *Angelle*, was denied.

---

**3.** Article 37.07, § 3(d), V.A.C.C.P., now provides: "(d) When the judge assesses the punishment, he may order an investigative report as contemplated in Section 4 of Article 42.12 of this code and after considering the report, and after the hearing of the evidence hereinabove provided for, he shall forthwith announce his decision in open court as to the punishment to be assessed."
This amendment to Article 37.07, however, did not become effective until September 1,

1981, and is not applicable to this case. Patently, the 1981 amendment to Article 37.07 was designed to meet the thrust of Judge Clinton's dissenting opinion in *Mason v. State*, 604 S.W.2d 83, 84–91 (Tex.Cr.App.1979). See, *Turner v. McDonald*, 676 S.W.2d 375, n. 5 (Tex.Cr.App.1984).

**4.** All emphasis throughout this opinion is that of the writer unless otherwise indicated.

The issue was revisited in *Mason v. State*, 604 S.W.2d 83 (Tex.Cr.App.1979), where the trial court again bifurcated a guilty plea trial, deferring punishment until it reviewed the probation officer's presentence investigation report. A panel opinion held that "[a]lthough there is some division in thought as to the *use* of the presentence investigation report ... it was not error for the trial court to recess the proceedings to *obtain* the presentence investigation report." On April 2, 1980, the Appellant's Motion for Rehearing En Banc in *Mason* was denied.

Judge Clinton, however, dissented to the denial of Appellant's Motion for Rehearing, *Mason*, supra at 84–91. Judge Clinton noted that utilizing a presentence investigation report to assess punishment developed as a "local common law procedure" and was frequently employed without objection by the defendant. Judge Clinton also observed in his opinion that ordering a presentence report was authorized only by the Adult Probation and Parole Act, but utilizing it in assessing punishment was not authorized at all. He found that the use of the presentence investigation report via this "local common law procedure" was not permissible. *Mason*, supra at 88. In Judge Clinton's view, "a trial court is not authorized to order, receive and consider a presentence investigation report in assessing punishment by confinement. In sum, the local common law procedure utilized here should be rejected by the Court." *Mason*, supra at 90.

Why, then, was the procedure not rejected by the Court? Judge Clinton enlightens us in footnote 21 of *Mason*, supra at 90.

"... I take it, though, the Court has concluded that by being agreeable then our appellant may not protest now, and we must await the day when an accused refuses to comply with the local common law procedure."

This failure to object to the use of a presentence report in determining punishment grew in significance in the next case to address the issue: *Green v. State*, 617 S.W.2d 253 (Tex.Cr.App.1981). In *Green*, a panel opinion authored by Presiding Judge Onion, and joined by Judge Clinton and Judge Tom Davis, the defendant contended that the trial court committed reversible error by utilizing a presentence investigation report to assess the punishment. After noting that the "proper use of such reports is to enable the trial court to pass on the issue of probation, not to determine the punishment to be assessed," Judge Onion went to the crucial aspect of the case.

"There was *no objection* at the time, and the pre-sentence report, made available to the appellant, *was not made a part of the appellate record. Appellant makes no assertion that there were improper matters in the report* which the court should not have considered.

In light of the pending motion for probation, *the failure to object,* and all the other facts and circumstances, appellant's contention is without merit.[3]"

The telling footnote 3, however, reflects Judge Onion's true position on the matter.

"[3] This writer maintains the strong belief that if trial courts would assess punishment at the penalty stage of the trial, and utilize the pre-sentence report *only to determine the issue of probation* these claims on appeal that the court considered otherwise inadmissible matters contained in the report in assessing punishment would be eliminated."

■ Cognizant of this "division in thought" as to the proper use of a presentence investigation report prior to the 1981 amendment to Article 37.07, § 3(d), V.A.C.C.P., we now turn to the case sub judice. We note at the outset that, unlike the defendants in *Mason* and *Green*, supra, and the defendant in *Tamminen v. State*, 653 S.W.2d 799 (Tex.Cr.App.1983), the appellant in this case did object to the use of the presentence report as a basis for determining punishment. The appellant in this case does assert that there are improper matters contained in the report, Cf. *Green*, supra at 255, and he has made the report part of the appellate record, Cf. *Green*, supra at 255. In this case, we can find that the punishment actually assessed by the

trial court was founded independently in the presentence investigation report, Cf. *Mason,* supra at 90–91. In short, the day has come "when an accused refuse[d] to comply with the local common law procedure," *Mason,* supra at 90, n. 21.

Bearing this in mind, we agree with Judge Clinton's observation in *Mason,* supra, that *Angelle* is *sui generis.* We, too, cannot perceive any explication or rationale to support the finding and holding of *Angelle.* Accordingly, *Angelle,* supra, is overruled.

We hold, therefore, that the trial court's use, over objection, of a presentence investigation report in determining what punishment will be assessed, prior to the effective date of the 1981 amendment to Article 37.-07, § 3(d), V.A.C.C.P., was error. Next must come the determination of the harmfulness of that error.

In this case, the judge assessing punishment did not have access to the transcript of the testimony at the guilt-innocence phase of trial. No evidence was elicited at the punishment hearing. Although a presentence report was properly ordered and utilized by the court in determining whether appellant should receive probation, we have held that the trial court could not consider the presentence report in determining appellant's punishment. The sentencing judge then was left with nothing to base his determination as to punishment on except the naked fact that appellant had been found guilty of the offense of sexual abuse of a child. This was the heart of appellant's objection at trial and our final question for review.

■■■ In our review of a trial judge's determination of the appropriate punishment in any given case a great deal of discretion is allowed the sentencing judge. Moreover and germane to the case at bar, it is proper for a different judge to sit at the punishment hearing and his decision as to punishment will not be disturbed on appeal absent a showing of abuse of discretion and harm. *Hogan v. State,* 529 S.W.2d 515 (Tex.Cr.App.1975); *Ben-Schoter v. State,* 634 S.W.2d 28 (Tex.App. Beau-

mont 1982). It is also the general rule that as long as a sentence is within the proper range of punishment it will not be disturbed on appeal. *Nunez v. State,* 565 S.W.2d 536 (Tex.Cr.App.1978); *Letterman v. State,* 171 S.W.2d 349 (Tex.Cr.App.1943). However, in all of the cases dealing with review in this area there was at least some evidence or facts available to the court and upon which the court could have relied in assessing punishment. We can find no case sanctioning, over timely objection, a particular punishment decision in which there was no evidence of the offense, no information about the defendant, no punishment evidence, no plea bargain; in short, nothing at all upon which the punishment decision could have been based. We decline to sanction such procedure and hold that under the limited facts of this case the trial judge abused his discretion when, over proper objection, he determined the appellant's punishment. Such determination was a violation of Art. 1.04, V.A.C.C.P., and Art. 1 Sec. 19 of the Texas Constitution constituting reversible error.

■■■ Under our bifurcated trial system, if a reversible error occurs at the penalty hearing before the trial judge alone, the case on appeal may be remanded to the trial court for the proper assessment of punishment. *Bullard v. State,* 548 S.W.2d 13, 18 (Tex.Cr.App.1977), *rev'd. on other grounds,* 665 F.2d 1347 (5th Cir.1982), *vacated, Estelle v. Bullard,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983). See also, *Hogan v. State,* 529 S.W.2d 515 (Tex. Cr.App.1975); *Ex parte Hill,* 528 S.W.2d 125 (Tex.Cr.App.1975); *Marrero v. State,* 500 S.W.2d 818 (Tex.Cr.App.1973); *Bradley v. State,* 456 S.W.2d 923 (Tex.Cr.App. 1970). Accordingly, cause number 79–CR–2313 is remanded to the 187th Judicial District Court of Bexar County for proceedings not inconsistent with this opinion.

It is so ordered.

McCORMICK, J., dissents.

TEAGUE, Judge, concurring.

I respectfully concur in the result the majority reaches.

I totally agree with Judge Miller, in the opinion he authors for the majority, that "the trial court's use, *over objection*, of a presentence investigation and report, [prepared by the local probation department], in determining what punishment will be assessed, prior to the effective date of the 1981 amendment to Article 37.07(3)(d), V.A.C.C.P., was error." (My emphasis). I also totally agree with Judge Miller that such error was not harmless in this instance.

I concur only in the result because I am unable to agree with many of the statements Judge Miller makes in the opinion he authors for the Court. For example, I am unable to agree that the holding in *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr.App.1978), is "peculiar" to our jurisprudence; especially is this not so when one considers that the presentence investigation and report that was ordered and conducted in that cause was done and made without objection by the defendant.

I will, however, agree that prior to the amendment to Art. 42.12, V.A.C.C.P., many trial court judges of this State ordered a presentence investigation and report only when considering whether the defendant should be granted probation. However, prior to the amendment, there was not any statutory prohibition that would have prevented a trial judge from using such in assessing punishment in general-where the defendant agreed, either expressly or implictly, to such occurring. Judge Roberts reached this same conclusion in *Angelle*, supra, when he stated the following on behalf of the panel in that cause: "We are not convinced that a pre-sentence investigation and report are appropriate only when the issue of whether a trial judge should grant a defendant probation is raised. Rather, whenever an issue of the proper punishment is present, [and the defendant does not object], a presentence investigation and report may be utilized to assist the trial judge in the exercise of his discretion [in the assessment of punishment]." (302). I wholeheartedly agree with what Judge Roberts stated.[1]

In this instance, the trial judge, over objection, considered the presentence investigation and report in assessing punishment. This he should not have done. The majority thus reaches the correct result in holding that the trial judge erred and that such error was not harmless.

For the above reasons, I concur in the result the majority reaches.

---

1. It is, of course, time for the Legislature of this State to further amend Art. 42.12, V.A.C.C.P., to expressly provide, as do some States, see, for example, California Penal Code Section 1204, that a presentence investigation and report may be conducted and prepared by other than the local county probation department. The reason this amendment is needed is obvious—not all such investigations and reports are done and prepared in a fair and impartial manner. Furthermore, why should the defendant himself not be able to present to the trial judge, from his standpoint, a comprehensive presentence report that could have a favorable impact on what punishment the trial judge might assess.